**Jean FITCHETT, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SCHOOL DISTRICT OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Nov. 21, 2012.

Decided April 8, 2013.

Reargument Denied June 6, 2013.

Kenneth M. Kapner, Philadelphia, for petitioner.

William E. Malone, Jr., Philadelphia, for respondent.

BEFORE: PELLEGRINI, President Judge, SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Judge SIMPSON.[1]

Jean Fitchett (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a Workers' Compensation Judge (WCJ) granting Claimant's penalty petitions, dismissing the School District of Philadelphia's (Employer) petition to terminate compensation benefits (termination petition), but suspending Claimant's workers' compensation benefits as of June 4, 2005, on the ground she voluntarily left the workforce. Claimant states eight issues for our review, including whether the WCJ erred in suspending her benefits on the basis that she retired. For the reasons that follow, we affirm in part and reverse in part.

## I. Background

In February 2001, while working as an instructional aide, Claimant sustained a compensable injury as a result of a student attack. Thereafter, Employer issued a notice of compensation payable (NCP) recognizing Claimant's injuries as a sprain of the left shoulder, left thumb, neck and lumbar spine and providing for weekly workers' compensation benefits of $355.59. Employer issued a notice of suspension for failure to return form LIBC–760 (suspension notice) as of September 5, 2003, due to her failure to return the LIBC–760 (verification of employment form) allegedly mailed to her in July 2003. On October 21, 2003, Employer filed a termination petition alleging Claimant fully recovered from her work-related injuries as of September 15, 2003.

In October 2003, Claimant filed a penalty petition alleging Employer unilaterally

---

1. This case was reassigned to the author on February 12, 2013.

suspended Claimant's benefits in violation of the Workers' Compensation Act (Act).[2] After the WCJ denied Employer's request for supersedeas of Claimant's weekly benefits, Claimant filed another penalty petition in May 2004, contending that Employer failed to pay attorney fees in accordance with the order denying the supersedeas request.

At a November 2004 hearing, Employer introduced the deposition testimony of Dr. Adam M. Meyers (First IME Physician), a physician board certified in physical medicine and rehabilitation, in support of its termination petition. First IME Physician testified that when he examined Claimant in September 2003, she reported "dull, aching pain across her interscapular region encompassing the entire shoulder girdle with pain traveling into the bilateral upper extremities to the level of the fingers." Dep. of Dr. Meyers, 3/22/04, at 8. Claimant also reported she could not lift her arms over her head or rotate her shoulders. First IME Physician's physical examination of Claimant revealed she could ambulate without any signs of pain, that she had full cervical range of motion, and that there was no evidence of cervical root tension signs. First IME Physician explained that a neurological examination of the bilateral upper extremities revealed no signs of motor weakness, evidence of abnormal sensation or muscle atrophy, and that Claimant's reflexes were within normal limits.

First IME Physician's examination of Claimant's shoulder revealed no evidence of rotator cuff pathology, scapular winging or atrophy. Claimant could actively elevate her left shoulder to approximately 90 degrees and passively go through the full range of motion. His examination of Claimant's hands revealed no evidence of atrophy, carpal tunnel syndrome or neuropathy in the median nerve. Finally, he testified his evaluation of X-rays of Claimant's bilateral upper extremities revealed no evidence of dislocation, subluxation or significant bone abnormalities. Based on his examination and review of Claimant's records, First IME Physician concluded Claimant suffered "myofascial injuries to the cervical spine, lumbar spine, thumb and … bilateral shoulders" as a result of the work incident of February 28, 2001. *Id.* at 14. First IME Physician ultimately opined Claimant fully recovered from her work-related injuries as of his September 15, 2003 evaluation and that she was fully capable of returning to work without restriction as of that date.

Claimant testified that after the February 2001 work incident, she experienced pain in her neck and arms, and a swollen left thumb. She continued to have chronic headaches, pain from the base of her neck radiating to her left arm, pain in her right shoulder, and loss of sensation in her left leg, all of which prevented her from performing her job duties.

With respect to her penalty petitions, Claimant testified she received no benefits since September 5, 2003; she never received form LIBC–760[3] prior to receiving the suspension notice on September 18, 2003; and she returned the suspension notice, along with the completed form, to Employer on September 24, 2003. Claimant also presented a completed LIBC–760 at the hearing.

---

2. Act of June 2, 1915, P.L. 736, as *amended,* 77 P.S. §§ 1—1041.4, 2501–2708.

3. A claimant must admit or deny employment or self-employment within 30 days of receiving form LIBC–760, "Employee Verification of Employment, Self–Employment or Change in Physical Condition," or benefits will be suspended. *See* Section 311.1 of the Act, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 631.1.

Claimant testified on cross-examination that she began receiving pension benefits of $699 per month in April 2002, and social security retirement benefits of $1,101 per month as of October 2004, but explained that she only accepted these benefits because "I was being impoverished by lack of funds coming in [from employment]." Notes of Testimony (N.T.), 11/02/04, at 59. Claimant further stated she did not look for work following her 2001 work injury. When asked whether she considered herself retired, Claimant responded "Well, I'm collecting retirement," and subsequently clarified that if not for her work injuries, she had planned to continue working. *Id.* at 72, 76.

In a November 2004 interlocutory order, the WCJ ordered Employer to reinstate Claimant's benefits as of November 2, 2004. Although Employer properly suspended Claimant's benefits for failure to return the LIBC–760, Claimant presented the completed form at the November 2, 2004 hearing. Therefore, Employer had no factual or legal basis to continue the suspension of Claimant's benefits as of that date. Nonetheless, the WCJ noted that the suspension of benefits from September 5, 2003, through November 1, 2004, remained an unresolved issue awaiting further evidence from the parties.

Significantly, the WCJ also ordered that Employer was entitled to a credit for pension and social security retirement benefits Claimant received against the renewed receipt of weekly compensation benefits.

At a subsequent hearing held on July 1, 2008, Employer introduced the deposition testimony of Dr. Anthony Puglisi (Second IME Physician), a board certified orthopedic surgeon who examined Claimant in April 2007. Second IME Physician testified that during the examination, Claimant complained of headaches and pain in her right shoulder and neck.

Second IME Physician also testified a physical examination of Claimant revealed a "fairly normal range" of left shoulder motion and "satisfactory" range of cervical spinal motion. Dep. of Dr. Puglisi, 5/22/08, at 22, 24. He further testified a review of Claimant's medical records, including a cervical spinal MRI and an EMG study, revealed only minimal degenerative changes and no injury to the neural structures. Second IME Physician's examination and review of Claimant's records did not correlate with Claimant's subjective complaints of pain. Claimant displayed "a lot of overembellishment of complaints" and "there [were] a lot of nonphysiologic findings" which he could not substantiate with the physical findings. *Id.* at 31–32. Second IME Physician ultimately opined Claimant "resolved any injury of strain or sprain to the left shoulder, cervical spine, or of the left upper extremity," and she could return to her pre-injury job with Employer. *Id.* at 32–33. Finally, he noted Claimant had some decreased range of motion in her right shoulder, which was not uncommon after undergoing rotator cuff surgery. *Id.* at 33.

Claimant then introduced the deposition testimony of Dr. Michael Martin Cohen (Neurologist), a board certified neurologist who began treating Claimant in August 2001. Neurologist testified Claimant complained of headaches, dizziness, insomnia, blurred vision, feeling off-balance, constant neck pain radiating into the left upper extremity and mid and low back pain. His initial physical examination revealed cervical tenderness and spasm, left hand weakness and diminished sensation in the C8/ulnar distribution over the left small and ring fingers. Neurologist initially diagnosed Claimant with post-traumatic headaches, left cervical radiculopathy, left cubital tunnel syndrome or ulnar neuropathy, and back and neck strain. After that diag-

nosis, he explained he conducted an EMG on in September 2001, which revealed a mixed nerve injury with left C8/T1 radiculopathy. He testified that at subsequent examinations in December 2007 and March 2008, Claimant's core symptoms of headaches, neck pain and left shoulder pain remained unchanged. However, Neurologist testified Claimant no longer needed treatment for her left thumb injury, and that her lumbar spine injury had resolved. Neurologist further testified he never found symptom magnification by Claimant, and opined she could not return to the workforce due to her unresolved nerve, shoulder, neck and headache conditions.[4]

At a final hearing in December 2008, Claimant testified she still had headaches, pain on certain neck movements, ongoing left shoulder discomfort and pain in her thumb that caused her to drop things. Claimant also testified she experienced pain in her right shoulder, that she had rotator cuff surgery in 2005 and physical therapy following her surgery. Moreover, Claimant testified she never returned to work following her February 2001 work injury. Although she planned to find employment as a babysitter, Claimant did not do so because she feared her work injuries would limit her abilities in that capacity. In response to the question, "Are you retired at this point?" Claimant responded "yes." N.T., 12/30/08, at 29. However, on redirect examination, she clarified that what she meant by "retired" is that she had to leave Employer due to her injuries. See id. at 31. Again, when questioned whether she would still be working if not for the injury, Claimant replied, "Sure I

would. Unless they told me I couldn't." Id. at 32.

The WCJ found Claimant's allegations that she did not receive the LIBC–760 prior to September 2003 to be unpersuasive and not credible, but found her testimony that she forwarded it to Employer by certified mail on or about September 23, 2003, to be credible. WCJ's Op., 5/18/09, Finding of Fact (F.F.) No. 13a. Accordingly, the WCJ granted Claimant's penalty petition alleging that Employer unilaterally suspended benefits in violation of the Act and awarded a 30 percent penalty on all unpaid benefits. WCJ's Order, 5/18/09. With respect to Claimant's other penalty petition, the WCJ listed the reasonable, related and necessary litigation costs incurred by Claimant and ordered Employer to pay those costs. Id.

Regarding Employer's termination petition, the WCJ found:

b) all findings and conclusions of [First IME Physician and Second IME Physician] that the work-injured left thumb, neck and back fully resolved are credible and more persuasive than contrary opinions of [Neurologist]. However, the Court rejects allegations of [First IME Physician and Second IME Physician] that all left shoulder work-related pathology resolved. On this issue, [Neurologist's] testimony is more persuasive;

c) all allegations the Claimant's *right* shoulder was affected by work trauma and [Claimant's] testimony of work-related headaches are unpersuasive and not credible;

4. Claimant also introduced the deposition testimony of Cheryl Lachman, R.N. (Nurse Lachman), a registered nurse who attended and observed Second IME Physician's medical examination of Claimant. Nurse Lachman testified Claimant was anxious throughout the examination; Second IME Physician examined Claimant's shoulders and back, which appeared to be tender; and during the examination, Claimant grabbed her leg and appeared to have pain in her left calf.

d) that as of June 4, 2005, [Claimant] was essentially retired and had voluntarily withdrawn from the workforce.

F.F. Nos. 13b–d (emphasis in original). Accordingly, the WCJ dismissed the termination petition, ordered Employer to continue to remit temporary total weekly benefits of $533.38 through June 3, 2005, and suspended Claimant's entitlement to workers' compensation benefits as of June 4, 2005. On appeal, the Board affirmed. Claimant's petition for review followed.[5]

## II. Discussion

### A. Suspension Based on Retirement

 Claimant first argues[6] the WCJ erred in suspending benefits as of June 4, 2005, on the basis that she "essentially retired" from the workforce because Employer never requested a suspension of benefits due to Claimant's retirement, either by amending its termination petition or issuing a suspension notice, and, therefore, she was not able to file an answer and was deprived of her due process rights.[7]

 To begin, we note a WCJ has the authority to suspend a claimant's benefits in the absence of a formal petition where doing so would not prejudice the claimant. *See Krushauskas v. Workers' Comp. Appeal Bd. (Gen. Motors)*, 56 A.3d 64 (Pa.Cmwlth.2012), *appeal denied*, ──

---

5. This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Dep't of Transp. v. Workers' Comp. Appeal Bd. (Clippinger)*, 38 A.3d 1037 (Pa.Cmwlth.2011).

6. Claimant also asserts the WCJ failed to issue a reasoned decision. Section 422 of the Act provides, in relevant part, that parties in a workers' compensation case are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. A decision is "reasoned" for workers' compensation purposes if it allows for adequate review by the Board without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 574 Pa. 61, 828 A.2d 1043 (2003). "A reasoned decision does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular statement affected the ultimate decision." *Acme Mkts., Inc. v. Workers' Comp. Appeal Bd. (Brown)*, 890 A.2d 21, 26 (Pa.Cmwlth.2006). Here, the WCJ adequately explained his credibility determinations as required by *Daniels*. Claimant's argument, however, is not so much that the WCJ's decision was not reasoned, but that she would have reasoned differently. Because we are able to conduct judicial review of the arguments raised in this appeal, Claimant's reasoned decision argument fails. *See Hall v. Workers' Comp. Appeal Bd. (Am.Serv.Grp.)*, 3 A.3d 734 (Pa.Cmwlth.2010) (mere disagreement with a WCJ's credibility determinations is not a basis for setting them aside).

7. A claimant's disability benefits will be suspended when he or she voluntarily leaves the labor market upon retirement. *Se. Pa. Transp. Auth. v. Workers' Comp. Appeal Bd. (Henderson)*, 543 Pa. 74, 669 A.2d 911 (1995). "Circumstances that could support a holding that a claimant has retired include: (1) where there is no dispute that the claimant retired; (2) the claimant's acceptance of a retirement pension; or (3) the claimant's acceptance of a pension and refusal of suitable employment within her restrictions." *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 4 A.3d 1130, 1138 (Pa.Cmwlth.2010), *aff'd*, ── Pa. ──, 67 A.3d 1194, 2013 WL 1196634 (Pa. 2013). "The mere possibility that a retired worker may, at some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability." *Henderson*, 543 Pa. at 79, 669 A.2d at 913. "For disability compensation to continue following retirement, a claimant must show that he is seeking employment after retirement or that he was forced into retirement because of his work-related injury." *Id.*

Pa. ——, 63 A.3d 1250 (Pa., No. 877 MAL 2012, filed April 3, 2013). A claimant is not prejudiced where she is put on notice that a suspension or termination is possible and she is given the opportunity to defend against it. *See id.* at 71. "Whether the claimant has adequate notice depends on the totality of the circumstances of a particular case." *Id.*

■ Here, Employer filed a 2003 termination petition averring Claimant's February 2001 work injuries resolved as of September 2003. In addition, Employer's entitlement to a previously claimed suspension remained at issue. In September 2003, Employer unilaterally suspended Claimant's benefits based on her failure to return form LIBC–760 (verification of employment form). This resulted in a petition for penalties and a November 2004 interlocutory decision wherein the WCJ ordered Claimant's benefits reinstated with a 30% penalty on the past due amount. The interlocutory order partially resolved the suspension and penalty petitions, and reinstated Claimant's indemnity benefits pending final order. *See* WCJ's Interlocutory Order, 11/24/04, at 1.

Significant for current purposes, the WCJ's interlocutory order also granted Employer a credit against Claimant's weekly indemnity benefits for the Social Security old age benefits and retirement pension benefits Claimant received after her indemnity benefits were reinstated.

Consequently, Claimant had notice Employer was seeking a termination of her benefits effective September 2003, a suspension of her benefits from September 2003 until November 2004, and a retirement pension/Social Security offset against her benefits effective November 2004. Clearly, the initial proceedings put Claimant and her attorney on notice that her application for and receipt of Social Security old age benefits and retirement pension

benefits would be at issue in the ensuing WCJ's proceeding.

■ More importantly, as in *Krushauskas,* the parties fully litigated the issue of whether Claimant voluntary retired from the workforce. Based upon a review of the evidence, the WCJ found "that as of June 4, 2005, [Claimant] was essentially retired and had voluntarily withdrawn from the work force." F.F. No. 13d. In support of this finding, the WCJ stated:

The evidence at bar establishes *[Claimant] applied for and receives her [Employer] pension and age-related Social Security benefits* (N.T., November 2, 2004, p. 59–61), *acknowledged to [Neurologist] that she had retired, indicated on an intake sheet of [Second IME Physician] that she retired* (N.T. exhibit E–3, p. 11), *acknowledged on December 30, 2008 that she "retired"* (N.T. December 30, 2008, p. 29) *and has not applied for any position in the local economy nor looked for any type of work.*

\* \* \* \*

[Claimant] contends she only applied for Social Security retirement benefits and her [Employer] pension as 'I was being impoverished by lack of funds coming in . . .' (N.T., November 2, 2004, p. 59). She elaborated as follows:

'What I mean by retired is I had to leave [Employer]. And in order to leave and still be able to live, take care of myself, I had to accept their retirement. Although they did tell me I could come back within a certain time. But surgery happened and different things and I just haven't been able to. I have a work ethic. My mother worked until she was 72 for the Board of Education and I worked two jobs . . . .'

Q. And if you didn't have this injury, would you be working today?

A. Sure, I would. Unless they told me I couldn't.

(N.T., December 30, 2008, p. 31–32)

*This testimony sounds good but on close inspection falls apart.* Initially, [Claimant] applied for her [Employer] pension in April, 2002, at a time when she was still receiving weekly indemnity benefits from an NCP issued on March 26, 2001 (N.T., November 2, 2004, p. 61–62). The indemnity benefits replaced her wages. The 'surgery' [Claimant] refers to is her right shoulder, which was not recognized nor found work-related. Her definition of 'retirement' is her inability to perform pre-injury duty at [Employer], not the entire labor force. However, it is difficult to credibly accept that her actual recognized work injury (chronic strains/sprains) precludes return to the entire labor force. *Once [Employer] reinstated weekly indemnity benefits in June, 2005, her monetary issues and lack of funds were essentially resolved, and [Claimant] still did not look for work . . . or apply for any position.* While [Neurologist] deemed her totally disabled (N.T., exhibit C–3, p. 53), his opinion is based on physical conditions not accepted by [Employer] or this Court. *To this Court, [Claimant] was essentially retired from the entire labor force as of June 4, 2005, the day after benefits were reinstated.* One would believe the period prior thereto involved Claimant's legitimate attempts at rehabilitation of her work injury and to contest the suspension of her benefits. [Employer] is hard-pressed to argue that benefits of [Claimant] should be suspended due to retirement at a point in time she was not receiving indemnity. *As of June 4, 2005, [Claimant] was receiving her pension, Social Security and indemnity benefits and not looking for work.*

WCJ's Op., 5/18/09, at 11–13 (emphasis by underline added; emphasis by underline in original deleted).

As reflected by his decision, the WCJ provided Claimant an adequate opportunity to defend against a suspension based on her voluntary retirement and withdrawal from the labor market. Claimant testified she only applied for Social Security old age benefits and retirement pension benefits because she had no money coming in. Claimant further testified she planned to resume working when she could physically do so.

Claimant's testimony, however, did not persuade the WCJ, who noted Claimant applied for her Social Security and pension retirement benefits *before* Employer suspended her benefits in 2003. Moreover, after Employer reinstated Claimant's indemnity benefits in June 2005, Claimant continued to receive Social Security benefits and retirement pension benefits. In addition, the WCJ found nearly all of Claimant's work-related injuries, consisting mostly of strains and sprains, ultimately resolved. However, Claimant did not look for any type of work.

 "[A]n employer need not prove the availability of suitable work when the employer establishes, under the totality of the circumstances, that the claimant has voluntarily retired from the workforce." *Krushauskas*, 56 A.3d at 73 (citing *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 4 A.3d 1130 (Pa.Cmwlth.2010), *aff'd*, ―― Pa. ――, 67 A.3d 1194, 2013 WL 1196634 (Pa.2013)). Where a claimant accepts a retirement pension, she is presumed to have voluntarily retired from the workforce. *Id.* In such a case, the employer is entitled to a suspension unless the claimant can show she is seeking employment or that her work injury forced her to retire. *Id.*

Here, Claimant accepted a retirement pension and Social Security old age benefits, but claimed she would return to work for Employer when able to do so. Claimant did not testify about looking for any other type of work in the labor market. "The mere possibility that a retired worker may, upon some future time, seek employment does not transform a voluntary retirement from the labor market into a continuing compensable disability." *Cnty. of Allegheny v. Workers' Comp. Appeal Bd. (Weis)*, 872 A.2d 263, 265 (Pa.Cmwlth. 2005) (quoting *Se. Pa. Transp. Auth. v. Workmen's Comp. Appeal Bd. (Henderson)*, 543 Pa. 74, 79, 669 A.2d 911, 913 (1995)). Further, the WCJ did not believe Claimant's testimony that she intended to return to the workforce. This credibility determination is within the WCJ's province as fact finder. *Krushauskas*. Accordingly, the WCJ did not err in suspending Claimant's benefits based on substantial evidence that she voluntarily retired from the workforce. *Id.*

### B. Credits and Offsets

Claimant further contends the WCJ erred in ordering credits and offsets based upon Claimant's receipt of pension and social security retirement benefits by way of the November 24, 2004 Interlocutory Order. Specifically, Claimant contends that Employer was not entitled to an offset because it failed to issue a form 761 notification of workers' compensation benefit offset or introduce documentation of its calculations.

Section 204(a) of the Act, 77 P.S. § 71(a), provides in relevant part:

Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) shall also be credited against the amount of the payments made under sections 108 and 306 ... and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306....

■■■ A claimant must have the opportunity to contest the amount of a credit claimed by his employer and to have a hearing where there is a disagreement on the amount. *Costa v. Workers' Comp. Appeal Bd. (Carlisle Corp.)*, 958 A.2d 596, 600 (Pa.Cmwlth.2008). The Board's regulation, at 34 Pa.Code § 123.4, allows the employer to take the credit unilaterally but requires that notice be given to the claimant so that he can challenge the amount and basis for the credit. *Id.* at 600–01.

In *Costa*, this Court held a WCJ was required to reduce a claimant's award by the amount of his unemployment compensation benefits, despite the fact the employer did not request an offset or present evidence on that question. There, the claimant's unchallenged testimony during the claim proceeding established the amount of unemployment compensation benefits he was receiving. Thus, we explained, "the WCJ was required to reduce [the claimant's] award by the amount of his unemployment compensation benefits regardless of whether [the employer] had requested the offset because the mandate of Section 204(a) cannot be waived by an employer." *Costa*, 958 A.2d at 601.

■■■■ Here, as in *Costa*, Claimant testified that she began receiving pension benefits of $699 per month as of April 1, 2002, and social security retirement benefits of $1,101 per month as of October 2004. Based on that unchallenged testimony, the WCJ was required to reduce Claimant's award by the amount of her pension and social security benefits. Be-

cause Employer took an offset pursuant to the WCJ's decision, not unilaterally, it was not required to provide Claimant with prior notice of that offset. Accordingly, the WCJ did not err in ordering credits and offsets based upon Claimant's receipt of pension and social security retirement benefits by way of the November 24, 2004 interlocutory order.[8]

## C. Right Shoulder Injury

■■■ Claimant next contends the WCJ erred in finding that her right shoulder injury was unrelated to the 2001 work incident and not amending the NCP to include that injury. To that end, Claimant asserts the WCJ capriciously disregarded medical testimony from Employer's physicians indicating Claimant suffered a right shoulder injury as a result of the February 2001 work incident. Claimant argues that in light of that evidence, the WCJ should have expanded the NCP to include a right shoulder injury. A WCJ may amend an injury description even when the claimant does not file a petition to review the NCP. *Cinram Mfg., Inc. & PMA Grp. v. Workers' Comp. Appeal Bd. (Hill),* 601 Pa. 524, 975 A.2d 577 (2009).

■■■ "[W]here no reasonable nexus or obvious relationship exists between the injury described in an NCP and a subsequently claimed physical condition, the claimant must still bear the burden of establishing the work-relatedness of a condition before an employer will bear the burden of disproving any continuing disability related to that subsequently alleged condition." *City of Phila. v. Workers' Comp. Appeal Bd. (Fluek),* 898 A.2d 15, 20 (Pa.Cmwlth.2006). While the WCJ could have modified the NCP to include a right shoulder injury, it remained Claimant's burden to prove the NCP was materially incorrect when issued and that her right shoulder injuries were work-related. Claimant simply failed to meet that burden as she did not offer any medical evidence to support a causal connection and relies only upon Employer's expert testimony, which the WCJ specifically found not credible to the extent it suggested Claimant's right shoulder injury resulted from the February 2001 work trauma.

## D. Form LIBC–760

■■■ Claimant also argues the WCJ erred in suspending her benefits as of September 5, 2003, based on her failure to return the LIBC–760. Claimant maintains once she challenged service, the burden should have shifted to Employer to prove she received the form, and because Employer failed to produce such evidence, the WCJ should have ruled in her favor.

8. Claimant argues that her due process rights were violated because the WCJ disposed of this issue by a non-appealable interlocutory order and, therefore, she could not challenge the amount if Employer improperly calculated the credits upon reinstatement of benefits. However, this argument is without merit because Claimant could have challenged the amount by filing a penalty petition or a petition to review a compensation benefit offset. Claimant also alleges that Section 204(a) of the Act violates the Equal Protection provisions of the Pennsylvania and United States Constitutions because the offsets against workers' compensation benefits based on social security retirement benefits discriminate on the basis of age. However, in *White v. Workers' Compensation Appeal Board (City of Pittsburgh),* 38 A.3d 1031 (Pa.Cmwlth.2011), we held that offsetting social security benefits by the percentage contributed by an employer is not age discrimination because it is rationally related to the purpose of the workers' compensation law. *See also Caputo v. Workers' Comp. Appeal Bd. (Com.),* 34 A.3d 908, 916–18 (Pa.Cmwlth.2012) (holding that Section 204(a) of the Act is reasonably related to the legitimate governmental interests of reducing an employer's compensation costs and encouraging individuals collecting social security retirement benefits to remain in or reenter the workforce).

Moreover, Claimant asserts the WCJ improperly disbelieved her uncontroverted testimony on the issue and provided inadequate reasons for that finding.

Section 311.1 of the Act provides, in relevant part:

> (g) If the employe fails to return the completed verification form within thirty days, the insurer is permitted to suspend compensation until the completed verification form is returned. The verification form utilized by the insurer shall clearly provide notice to the employe that failure to complete the form within thirty days may result in a suspension of compensation payments.

77 P.S. § 631.1(g). Moreover, Section 406 of the Act, 77 P.S. § 717, relating to service of notices, provides in relevant part (with emphasis added):

> All notices and copies to which any parties shall be entitled under the provisions of this article shall be served by mail, or in such manner as the department shall direct. *For the purposes of this article any notice or copy shall be deemed served on the date when mailed, properly stamped and addressed, and shall be presumed to have reached the party to be served; but any party may show by competent evidence that any notice or copy was not received,* or that there was an unusual or unreasonable delay in its transmission through the mails. In any such case proper allowance shall be made for the party's failure within the prescribed time to assert any right given him by this act.

 The above sections of the Act clearly provide that an employer may automatically suspend benefits when a claimant fails to return the completed verification form, and where a party alleges non-receipt of a notice, that party bears the burden of proof. Claimant could only rebut the presumption that she received the notice by introducing competent evidence demonstrating otherwise. Here, while Claimant provided testimony that she did not receive the LIBC–760, the WCJ specifically found that testimony to be unpersuasive and not credible. Because the WCJ is the ultimate finder of fact and is empowered to determine witness credibility, we will not disturb such credibility determinations.[9] Accordingly, the WCJ did not err in suspending Claimant's benefits as of September 5, 2003.

### E. Witness Costs

 Next, Claimant alleges the WCJ erred in rejecting reimbursement for Nurse Lachman's attendance at Second IME Physician's medical examination and for Nurse Lachman's medical report because such costs are not proscribed by Section 314(b) of the Act. Moreover, Claimant contends the WCJ erred in rejecting those costs because Employer did not raise an objection to them.

Section 314 of the Act, 77 P.S § 651, relating to examinations of injured employees, provides in relevant part (with emphasis added):

> (b) In the case of a physical examination, the employe shall be entitled to have a health care provider of his own selection, *to be paid by him,* participate in such examination requested by his employer or ordered by the workers' compensation judge.

In *Kan v. Workers' Compensation Appeal Board (Budd Co.),* 852 A.2d 1286 (Pa.Cmwlth.2004), this Court held the costs for a nurse to attend an IME were

---

9. "It is well established that the WCJ is the ultimate fact finder and is empowered to determine witness credibility and evidentiary weight." *Shannopin Mining Co. v. Workers' Comp. Appeal Bd. (Sereg),* 11 A.3d 623, 627 (Pa.Cmwlth.2011).

not recoverable as a "witness" cost. *Id.* at 1288. We explained that while costs incurred in obtaining testimony from a witness are recoverable, "there is no authority for awarding as costs time spent by a witness observing and preparing to testify to facts." *Id.* Just as in *Kan,* any costs associated with Nurse Lachman's attendance at the IME or her preparation of a report were not recoverable.

■■■ However, Employer never objected to the bill of costs or argued that Nurse Lachman was not a witness whose costs were reimbursable, and Employer admits as much in its brief to this Court.[10] Because the issue was not raised by Employer before the WCJ, it is deemed waived. *See Wheeler v. Workers' Comp. Appeal Bd. (Reading Hosp. and Med. Ctr.),* 829 A.2d 730, 734 (Pa.Cmwlth.2003) ("It is well established that an issue is waived unless it is preserved at every stage of the proceeding. The strict doctrine of waiver applies to a workers' compensation proceeding.") (Citations omitted). Because it was waived, the WCJ erred in raising his own objection to reimbursement for costs associated with Nurse Lachman's attendance at the IME and her report.[11]

Therefore, we reverse the Board on this issue, thereby modifying the award to include the costs for Nurse Lachman's attendance at the April 19, 2007 IME and for her report.[12] These costs are set forth in Exhibit C–8 as follows:

Attend IME: 2.2 hours × $90.00 for a total $198.00

Report: 2 hours × $90.00 for a total of $180.00

*See* Ex. C–8 (Claimant's Costs), Invoice of Mindy Cohen & Assocs., 5/7/2007.

## F. Unreasonable Contest Attorney Fees

Finally, Claimant argues she is entitled to unreasonable contest attorney fees and costs pursuant to Section 440 of the Act because Employer's contest of the penalty and termination petitions was unreasonable. Claimant asserts Employer's contest of the penalty petitions was frivolous and filed for the purpose of harassment, noting Employer's counsel refused to acknowledge the certified return receipt as proof of service of return of form LIBC–760 and argued it did not have to reinstate benefits until a judge ordered it to do so. With

---

**10.** Section 440(a) of the Act, added by the Act of February 8, 1972, P.L. 25, *as amended,* 77 P.S. § 996(a), provides:

In any contested case where the insurer has contested liability in whole or in part, including contested cases involving petitions to terminate, reinstate, increase, reduce or otherwise modify compensation awards, agreements or other payment arrangements or to set aside final receipts, the employe or his dependent, as the case may be, in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for attorney's fee, *witnesses,* necessary medical examination, and the value of unreimbursed lost time to attend the proceedings: Provided, That cost for attorney fees may be excluded when a reasonable

basis for the contest has been established by the employer or the insurer. (Emphasis added.)

**11.** *See also Miller v. Workers' Comp. Appeal Bd. (Giant Food Stores),* 715 A.2d 564, 566–67 (Pa.Cmwlth.1998) (Court affirmed Board's reversal of a WCJ's order directing employer to pay further attorney fees to claimant despite stipulation between parties that attorney fees were not at issue).

**12.** "An appellate court may affirm, *modify,* vacate, set aside or reverse any order brought before it for review, and may remand the matter and direct the entry of such appropriate order, or require such further proceedings to be had as may be just under the circumstances." 42 Pa.C.S. § 706 (emphasis added).

respect to the termination petition, Claimant asserts that because Employer's experts at all times either related her right shoulder injury to the work incident or did not opine it was an unrelated or fully resolved condition, Employer could not, as a matter of law, have been granted a termination of benefits.

Section 440 of the Act, 77 P.S. § 996, provides that a successful claimant is entitled to an award of attorney fees unless the employer establishes it had a reasonable basis for the contest. The reasonableness of an employer's contest depends upon whether the contest was prompted to resolve a genuine disputed issue or merely to harass the employee. *Yespelkis v. Workers' Comp. Appeal Bd. (Pulmonology Assocs., Inc.)*, 986 A.2d 194 (Pa.Cmwlth.2009). "An issue of credibility is a legitimate and reasonable subject of inquiry and challenge, and where the evidence lends itself to contrary inferences, an employer's contest may be adjudged reasonable." *Thissen v. Workers' Comp. Appeal Bd. (Hall's Motor Transit)*, 137 Pa.Cmwlth. 227, 585 A.2d 612, 615 (1991) (citation omitted).

Here, in opposition to Claimant's penalty petition alleging a unilateral suspension of benefits, Employer submitted its suspension notice based upon a failure to return the LIBC–760. Although Claimant testified she never received the LIBC–760, there was a genuinely disputed issue as to whether she had actually received the form making Employer's contest of the penalty petition reasonable.[13]

With respect to Employer's termination petition, First IME Physician and Second IME Physician unequivocally testified Claimant fully recovered from her work injury, while Claimant's expert, Neurologist, testified her injuries remained unresolved and prevented her from returning to her position with Employer. Again, such a dispute constitutes sufficient grounds for a reasonable contest. Claimant's contention that Employer could not possibly have been granted a termination of benefits because of its experts' opinions regarding her right shoulder injury is without merit, because the right shoulder was not recognized by Employer in the NCP and was not at issue.

### III. Conclusion

For the foregoing reasons, we reverse the Board's order with respect to the denial of costs associated with Nurse Lachman's report and her attendance at Second IME Physician's April 2007 examination of Claimant. We therefore modify the Board's order to award Claimant costs in the amount of $180.00 for Nurse Lachman's report and $198.00 for Nurse Lachman's attendance at the IME. In all other respects, we affirm.

### *ORDER*

**AND NOW,** this 8th day of April, 2013, in accord with the foregoing opinion, the order of the Workers' Compensation Ap-

---

13. The WCJ found Employer's contest was initially reasonable, but became unreasonable when, despite the interlocutory order directing reinstatement of Claimant's benefits as of November 2, 2004, Employer delayed reinstatement of Claimant's benefits until June 2005. The WCJ nevertheless declined to award counsel fees where "the record does not indicate what if any efforts or legal work Claimant's counsel undertook post November 2, 2004 to push [Employer] to reinstate ... an award of counsel fees." WCJ's Op., 5/14/09, at 14. Further, the Board noted there was no evidence indicating the actual date on which Employer resumed paying Claimant's benefits. Thus, the Board properly concluded the record did not support an award of counsel based on Employer's untimely reinstatement of benefits.

peal Board is **REVERSED** with respect to the denial of costs associated with Nurse Lachman's report and attendance at Dr. Puglisi's independent medical examination on April 19, 2007. The order of the Workers' Compensation Board of Review, which affirmed the Workers' Compensation Judge's decision, is therefore modified to award Petitioner Fitchett costs in the amount of $180.00 for Nurse Lachman's report and $198.00 for Nurse Lachman's attendance at the IME. In all other aspects, the order of the Board is **AFFIRMED.**

## DISSENTING OPINION BY President Judge PELLEGRINI.

Based on the "totality of the circumstances," I would hold that the issue of whether Claimant had voluntarily retired from the workforce was not properly before the WCJ and, therefore, the WCJ lacked the authority to suspend benefits on that basis. I would also hold that to properly raise an issue not raised in the formal proceeding, a petition to amend has to be made in accordance with 34 Pa.Code § 131.35. Accordingly, I respectfully dissent.

What was before the WCJ was Employer's termination petition alleging that Claimant had fully recovered from her work-related injuries and Claimant's penalty petitions: one alleging that Employer unilaterally suspended Claimant's benefits in violation of the Pennsylvania Workers' Compensation Act (Act) [1] and the other contending that Employer failed to pay attorneys' fees in accordance with the order denying the supersedeas request.

The matter regarding whether Claimant had voluntarily retired from the workforce was incidentally raised, as explained in the majority opinion, on cross-examination and was never the focus of the proceeding. The issue of whether Claimant had voluntarily retired was never raised by Employer either by petition or motion. Based on that scant testimony, the WCJ suspended benefits finding that Claimant had voluntarily retired from the workforce. I respectfully dissent because, based on the "totality of the circumstances," that issue was not sufficiently raised for the WCJ to be able to consider it.

Not addressed by the parties because it was filed after their briefs had been filed is our recent decision in *Krushauskas v. Workers' Compensation Appeal Board (General Motors)*, 56 A.3d 64 (Pa.Cmwlth. 2012).[2] In that case, we addressed whether in a hearing on a penalty petition, an employer could raise for the first time that benefits should be suspended because the claimant had voluntarily retired from the workforce. We held that the WCJ had authority to suspend benefits in that case, explaining:

> [A] WCJ has authority to suspend/terminate a claimant's benefits in the absence of a formal petition where doing so would not be prejudicial to the claimant, *i.e.*, the claimant is put on notice that a suspension/termination is possible and is given the opportunity to defend against it. Whether the claimant has adequate notice depends on the totality of the

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1—1041.4, 2501–2708.

2. I dissented in that case because I would have held that the employer had to file a formal petition to suspend benefits because workers' compensation litigation is like civil litigation that typically ends after the trial is over but goes on for years, if not decades, and there should be some record that the Bureau of Workers' Compensation can tell on what basis a claim was granted or denied and not have to search the record to see if the matter was raised. Informing that view is that workers' compensation is insurance and insurance claims or denials have to be documented in writing.

circumstances of a particular case. This includes the procedural history, the factual history, the nature of claimant's petition, and the nature of the employer's response to the claimant's petition. *Id.* at 71. Because the claimant in that case was not disputing that he had notice that at issue was whether he had withdrawn from the workforce, we held that suspension of benefits was warranted. *Id.* at 72. In so holding, we specifically noted, "[t]his is not a situation where the WCJ sua sponte suspended Claimant's benefits after the close of the record." *Id.* While *Krushauskas* held that an issue could be considered even though it was not formally raised, because the issue of adequate notice was conceded, we did not address what type of notice is needed to meet the "totality of the circumstances" test.

Not addressed in *Krushauskas* was the Workers' Compensation Regulation at 34 Pa.Code § 131.35, which provides:

(a) A party has the right to amend a pleading at any time in a proceeding before a judge, unless the judge determines that another party has established prejudice as a result of the amendment.

This rule requiring amendment and *Krushauskas* recognize that the purpose behind requiring the proof correspond to the pleadings is to protect the party against unfair surprise and not have to defend against matters of which the party has no notice—in other words, to provide the party with due process.

This is also consistent with the principles of Section 35.49 of the General Rules of Administrative Practice and Procedure[3] which, although not applicable to workers' compensation proceedings, addresses when and how issues not raised by the parties in the pleadings but raised at the hearing are allowed to be considered by the administrative tribunal. It provides:

(a) When, at a hearing, issues not raised by the pleadings are introduced by express or implied consent of the parties, they shall be treated as if they had been raised in the pleadings. The amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these new issues may be made upon motion of a participant at any time during the hearing. If evidence upon the new issues is objected to on the ground that it is not within the issues raised by the pleadings, the agency head or the presiding officer may allow the pleadings to be amended and the evidence to be received, when it appears that the presentation of the merits of the proceeding will be served thereby without prejudicing the public interest or the rights of any participant. When in the discretion of the agency head or the presiding officer, a continuance is necessary in order to enable the objecting participant to meet the new issues and evidence, a continuance may be granted by the agency head or the presiding officer....

(b) If an amendment adopted under subsection (a) has the effect of broadening the issues in the proceeding, notice of the amendment shall be given in the same manner as notice was given at the commencement of the proceeding and to the same class of persons who received the notice.

1 Pa.Code § 35.49.

Like Pa. R.C.P. No. 1033,[4] under Section 35.49 of the General Rules of Administrative Practice and Procedure, a party seeking to have an issue raised at the hearing that was not raised in the formal pleadings

---

3. While 34 Pa.Code § 131.35(b) supersedes Section 35.49 of the General Rules of Administrative Practice and Procedure, the two regulations are consistent to the extent that they both require a party to amend a pleading before the judge in order to raise a new issue.

4. Pa. R.C.P. No. 1033 provides:

must make a motion to amend the pleadings to raise the issue. Both the General Rules and the Rules of Civil Procedure require that there be a formal motion to broaden the issues raised in the formal proceedings. I would extend what is applicable to general administrative proceeding and civil litigation to workers' compensation proceedings to give adequate notice that an issue has been joined.

Applying 34 Pa.Code § 131.35(a) and *Krushauskas'* "totality of the circumstances" test to the facts of this case, no argument is being made that the petition was amended or even that the issue was joined, only that it was essentially within the discretion of the WCJ to decide whether to address this issue. The only reference to withdrawal from the workforce was several questions Employer asked Claimant as to whether she was retired and whether she was receiving a pension, but that questioning does not establish that Employer was seeking a termination of benefits based upon Claimant's retirement, especially since Employer never formally requested that the pleading be amended. Given that asking several questions amounts to little more than a "whiff" of raising the issue, and the lack of a petition to amend, Employer never requested that benefits be suspended on that basis, and under the totality of the circumstances test enunciated in *Krushauskas,* the WCJ erred in suspending Claimant's benefits based on her voluntary retirement from the workforce.

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.